## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| VICTOR MOLINA,<br>   *Plaintiff*,<br><br>     v.<br><br>ANTONIO SANTIAGO, *et al.*,<br>    *Defendants*. | No. 3:19-cv-1630 (VAB) |

## INITIAL REVIEW ORDER AND ORDER ON MOTION TO APPOINT COUNSEL

Victor Molina ("Plaintiff"), then incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, has filed a Complaint *pro se* under 42 U.S.C. § 1983 against Director of Security Antonio Santiago, Security Risk Group ("SRG") Coordinator John Aldi, Lieutenant Julian Russell, Hearing Officer Tracy King, District Administrator Edward Maldonado, and Correctional Officer Payne (collectively "Defendants"). Compl., ECF No. 1 (Oct. 16, 2019).

Mr. Molina has sued Defendants in their individual and official capacities, and alleges that they violated his First and Fourteenth Amendment rights by improperly classifying him as an SRG member based on posts to Facebook. Mr. Molina seeks damages and declaratory relief.

Mr. Molina has also moved for the Court to appoint *pro bono* counsel. Mot. to Appoint Counsel, ECF No. 7 (Jan. 3, 2020).

The Court will permit Mr. Molina's case against Defendants in their individual capacities to proceed in  the following claims: the First Amendment claim against Defendants Russell, Payne, King, and Maldonado; the Fourteenth Amendment substantive due process claim against Defendants Russell, Payne, King, and Maldonado; the Fourteenth Amendment procedural due process claim against Defendants King and Maldonado; and the supervisory liability claim

against Defendants Santiago and Aldi for failing to address the First and Fourteenth Amendment claims.

The Court **DISMISSES** all official-capacity claims, and **DENIES without prejudice to renewal** the motion to appoint counsel.

## I.      BACKGROUND

In March 2018, while Mr. Molina was incarcerated as a pretrial detainee[1] at New Haven Correctional Center, Compl. at 9 ¶ 1, Lieutenant Russell and Correctional Officer Payne allegedly brought him to the restrictive housing unit because Facebook posts showed that he was a member of the SRG Crips, *id.* ¶ 2. Disciplinary Investigator Acevedo allegedly stated that if Mr. Molina did not cooperate, it would make things worse. *Id.*

Lieutenant Russell allegedly brought Mr. Molina to his office and tried to get Mr. Molina to admit that he was a gang member because of the Facebook posts. *Id.* ¶ 3. Mr. Molina allegedly denied that he was a gang member. *Id.* ¶ 3B. Mr. Molina allegedly stated that he had not violated any rules and asked why he was in the restrictive housing unit. *Id.* Lieutenant Russell allegedly told Mr. Molina that if he did not sign an admission form, Lieutenant Russell would make sure Mr. Molina received sanctions of ninety days loss of phone, commissary, and visiting privileges. *Id.* ¶ 4. Mr. Molina allegedly complained that "this aint [sic] fair," but because of the threatened "harsh sanctions," he signed the form admitting gang membership. *Id.* ¶¶ 5–6.

On April 4, 2018, Mr. Molina allegedly had a hearing for SRG affiliation before Hearing Officer King. *Id.* ¶ 9. Mr. Molina allegedly stated that he was not a gang member. *Id.* ¶ 10. Hearing Officer King allegedly stated that they had evidence of gang membership from

---

[1] The Connecticut Department of Correction website shows that Mr. Molina was sentenced on November 2, 2018. *See* Inmate Information, *Connecticut State Dep't of Correction,* available at www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=425150 (last visited Apr. 21, 2020).

Facebook, but Mr. Molina was not shown any evidence of Facebook posts or pictures indicating his gang membership. *Id.* ¶ 11. When Mr. Molina asked to see the evidence, Hearing Officer King allegedly refused to show him. *Id.* at 10, ¶ 12.

He further alleges that Hearing Officer King told him that if he did not cooperate, she would send him to solitary confinement in Phase 1 at Northern Correctional Institution, where he would be required to serve two years on twenty-three hour lockdown with no visits or good time credit. *Id.* ¶ 13. Mr. Molina allegedly felt pressured by the threats and signed the form to avoid severe sanctions. *Id.* ¶ 14.

On that same day, April 4, 2018, Mr. Molina thus was affiliated as a member of SRG Crips, and was allegedly sent to Phase 3 of the SRG Program at Corrigan-Radgowski Correctional Center ("Corrigan"). *Id.* ¶ 15. While at Corrigan, Mr. Molina allegedly appealed his SRG designation. *Id.* ¶ 16.

In June 2018, the appeal was allegedly denied. *Id.* ¶ 17. Mr. Molina alleges that District Administrator Maldonado did not properly investigate or review his appeal. *Id.* In addition, Mr. Molina alleges that Director Santiago and SRG Coordinator Aldi are improperly compelling their subordinates to designate pretrial detainees as SRG members based on Facebook posts. *Id.* ¶¶ 20-21.

Mr. Molina alleges that inmates in the SRG Program at Corrigan are subject to numerous "[a]typical and significant hardship[s.]" *Id.* at 12 ¶ 1–13 ¶ 20. All of these inmates are allegedly disqualified from receiving good time credits or parole, nor are they eligible for halfway house, transitional supervision, or reentry programs. *Id.* at 12 ¶ 1. In Phase 3 at Corrigan, social contact through cell doors is allegedly prohibited. *Id.* ¶ 2. Mr. Molina allegedly can spend only $25 in the commissary, while general population inmates can allegedly spend $75 per week and $150

3

on holidays. *Id.* ¶ 3. Mr. Molina allegedly is permitted only three phone calls per day, while general population inmates are allowed six phone calls per day. *Id.* ¶ 4.

Mr. Molina allegedly has no access to a library, reading materials, or a law library, nor does he have access to religious services or educational programs. *Id.* ¶¶ 5-6, 13. Mr. Molina allegedly must use "security pens the size of a middle finger and security toothbrushes the size of a pinkie." *Id.* ¶ 7. The back window of his cell allegedly is blurry so he cannot see the sun outside. *Id.* ¶ 8. Furthermore, Mr. Molina allegedly does not have access to a toilet brush to clean the toilet he shares with another inmate, who is allegedly affiliated with a different gang. *Id.* ¶ 9, 13 ¶ 14.

Other than one and a half hours of recreation per day, Mr. Molina must remain in his cell. *Id.* at 12 ¶ 10. When there is a fight somewhere in the facility, SRG inmates allegedly are not permitted to enjoy recreation time. *Id.* ¶ 11. When recreation time is cut short, Mr. Molina allegedly receives forty-five minutes of recreation rather than the one hour to which they allegedly are entitled. *Id.* ¶ 12. Inmates allegedly have no access to hot water to prepare food purchased from the commissary. *Id.* at 13 ¶ 17.

Mr. Molina alleges other hardships unique to him because of his diabetes. First, Mr. Molina alleges he must shower daily to prevent infection, but any fight or "code blue" results in a three-to-five day lockdown without showers. *Id.* ¶ 18. Second, Mr. Molina alleges that he is required to exercise to keep his blood sugar readings level and prevent heart attack, liver failure, amputations, and high blood pressure, but the SRG Program allegedly prevents him from keeping the required health regimen. *Id.* ¶ 19. Additionally, some correctional officers will not permit him to work out in his cell. *Id.* Third, any fight in the SRG Program delays delivery of commissary orders, sometimes for a week. *Id.* ¶ 20. Once, Mr. Molina allegedly had to go

4

without washing materials for two weeks. *Id.*

As further support for his claims that Defendants Russell, Payne, Acevedo, and King have been sued many times already regarding their "blatant fraud" of improperly designating inmates into SRGs, Mr. Molina attaches affidavits from thirteen other inmates, including Patrick Lewis, whose case is being adjudicated under No. 3:18-cv-1403 (JAM), and Brenden Benway, whose case is pending before this Court under No. 3:19-cv-208 (VAB). Compl. at 20-34.

On October 16, 2019, Mr. Molina filed his Complaint against Director Santiago, SRG Coordinator Aldi, Lieutenant Russell, Hearing Officer King, District Administrator Maldonado, and Correctional Officer Payne for violating his First and Fourteenth Amendment rights. Compl. at 14-15.

On January 3, 2020, Mr. Molina filed a motion to appoint counsel. Mot. to Appoint Counsel, ECF No. 7 (Jan. 3, 2020).

On February 24, 2020, Mr. Molina notified the Court that he was now incarcerated at Osborn Correctional Institution in Somers, Connecticut. Notice of Change of Address, ECF No. 8 (Feb. 24, 2020).

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district

court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'") (quoting 28 U.S.C. § 1915A).

The Federal Rules of Civil Procedure require that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d

Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

## III.   DISCUSSION

Mr. Molina raises five claims for relief: (1) Director Santiago and SRG Coordinator Aldi violated his First and Fourteenth Amendment rights by creating the policy of SRG designation based on Facebook posts, retaliating against him based on his speech, punishing him as a pretrial detainee, and not affording notice to enable him to prepare a defense, Compl. at 14; (2) Lieutenant Russell and Correctional Officer Payne violated his First and Fourteenth Amendment rights by bringing him to RHU based on Facebook posts, retaliating against him for his speech, coercing him to admit gang membership under threat of harsher sanctions, and punishing him as a pretrial detainee, *id.*; (3) Investigator Acevedo, who is not a defendant in this case, fraudulently advised him to cooperate or suffer worse sanctions, *id.* at 15; (4) Hearing Officer King violated his First and Fourteenth Amendment rights by failing to provide notice prior to the hearing, denying him the ability to present evidence or see the evidence against him, failing to conduct the hearing impartially, and punishing him as a pretrial detainee for his speech on Facebook, *id.*; and (5) District Administrator Maldonado violated his First and Fourteenth Amendment rights by denying his appeal, *id.* at 16.

The Court addresses each claim in turn, and then Mr. Molina's motion for appointment of *pro bono* counsel.

### A.  Requests for Relief

As an initial matter, the Court notes that Mr. Molina has named all Defendants in their individual and official capacities and does not specify in which capacity he seeks damages from Defendants.

Investigator Acevedo is not named as a Defendant, yet Mr. Molina includes a claim against Investigator Acevedo as his third claim for relief. In the Complaint's case caption and the list of parties, Mr. Molina names only six Defendants—Director Santiago, SRG Coordinator Aldi, Lieutenant Russell, Hearing Officer King, District Administrator Maldonado, and Corrrectional Officer Payne. Compl. at 1-3.

Federal Rule of Civil Procedure 10(a) requires that all parties be named in "title of the complaint," i.e., the case caption. Fed. R. Civ. P. 10(a). Because Investigator Acevedo is not included in the title or the list of parties with the other Defendants, he is not a defendant in this case, and any claims against him will be dismissed.

As correctional employees, all Defendants are state officials. Any request for damages from state officials in their official capacities is barred by the Eleventh Amendment unless the state has waived this immunity or Congress has abrogated it. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (Eleventh Amendment, which protects the state from suit for monetary relief, also protects state officials sued for damages in their official capacity). Section 1983 does not abrogate state sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 342 (1979), and Mr. Molina has alleged no facts suggesting that the State of Connecticut has waived its immunity. As a result, all claims for damages against Defendants in their official capacities will be dismissed under 28 U.S.C. § 1915A(b)(2).

In addition to damages, Mr. Molina seeks a declaration that the defendants violated his constitutional rights. Compl. at 17. Declaratory relief operates prospectively, and is intended to enable parties to adjudicate claims before either party suffers significant damages. *Orr v. Waterbury Police Dep't*, No. 3:17-cv-788 (VAB), 2018 WL 780218, at *7 (D. Conn. Feb. 8, 2018) (citations omitted) (dismissing the request for declaratory relief because the request related

8

only to past actions; the plaintiff had not identified any legal issue that could be resolved by declaratory relief); *see also Thomas v. Aldi*, No. 3:18-cv-1350 (VAB), 2020 WL 1139908, at *4 (D. Conn. Mar. 9, 2020) (same). As Mr. Molina seeks a declaration regarding past actions, the request for declaratory relief is inappropriate[2] and will be dismissed under 28 U.S.C. § 1915A(b)(1).

Accordingly, the request for declaratory relief, claims against Investigator Acevedo, and claims against all Defendants for damages in their official capacities will be dismissed under 28 U.S.C. § 1915A(b).

### B. First Amendment Claims

"To state a First Amendment claim sufficient to withstand a motion to dismiss, a plaintiff must allege '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (citing *Espinal v. Goord*, 558 F.3d 119, 138 (2d Cir. 2009)).

"The Supreme Court has recognized a First Amendment interest in posting on social media." *Hayes v. Santiago*, No. 3:18-CV-1758 (JAM), 2018 WL 5456494, at *3 (D. Conn. Oct. 29, 2018) (citing *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017)).

Mr. Molina alleges that Lieutenant Russell and Correctional Officer Payne brought him to RHU based on his Facebook posts, Hearing Officer King found him guilty of SRG affiliation based on those same Facebook posts, and District Administrator Maldonado failed to correct the

---

[2] The Court notes that if Mr. Molina were to prevail on any of his claims, a judgment in his favor would serve the same purpose as a declaration that the defendants had violated his rights regarding that claim. Thus, any request for declaratory relief is redundant. *See U.S. v. $2,350,000.00 in Lieu of One Parcel of Property Located at 895 Lake Avenue, Greenwich, Connecticut*, 718 F. Supp. 2d 215, 229 n.7 (D. Conn. 2010) (noting that if property is not forfeited, receiver-claimants would have been shown to be prevailing innocent owners and declaration to that effect would be redundant).

finding on appeal. These allegations support a plausible claim that Defendants Russell, Payne, King, and Maldonado violated his First Amendment right to free speech.

"In the context of a First Amendment retaliation claim" the Second Circuit has held that "only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Wrobel v. Cty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012). "Otherwise, the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). Courts tailor the objective inquiry to determine adverse action to the circumstances of the retaliation claim. *Id.* at 493 (finding that the definition of adverse action "is not static across contexts," but "must be tailored to the different circumstances in which retaliation claims arise. Prisoners may be required to tolerate more than public employees ... before a retaliatory action taken against them is considered adverse" (internal quotation marks and citation omitted)).

Mr. Molina states a plausible claim for violation of his First Amendment rights for three reasons.

First, the First Amendment protects Mr. Molina's interest in posting on his Facebook page. *See Packingham*, 137 S.Ct. at 1737 (recognizing that "to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of his First Amendment rights").

Second, Mr. Molina sufficiently alleges that Defendants took adverse actions against him by placing him in the SRG Program; he sets forth a detailed comparison between the conditions of his confinement in the SRG Program with those in general population. Compl. at 12-13 (alleging that his conditions of confinement include limited recreation, phone privileges, and

10

visitation; reduced commissary privileges; and denial of access to programs and a library). Taking these allegations as true, Mr. Molina has sufficiently alleged that Defendants' conduct would deter an individual of ordinary firmness from engaging in speech on their social media for fear that prison officials may use those statements against them in future detention decisions as pretrial detainees. *See Benway v. Aldi*, No. 3:19-cv-208 (VAB), 2019 WL 4762117, at *7–8 (D. Conn. Sept. 29, 2019) (finding allegations of SRG placement as a pretrial detainee based on social media posts sufficient to state plausible First Amendment retaliation claim); *see also Scozzari v. Santiago*, No. 3:19-cv-00229 (JAM), 2019 WL 1921858, at *4 (D. Conn. Apr. 29, 2019) (same); *Hayes v. Santiago*, No. 3:18-cv-01758 (JAM), 2018 WL 5456494, at *3 (D. Conn. Oct. 29, 2018) (same).

Third, Mr. Molina alleges facts sufficient to state a claim that his Facebook posts caused Defendants to place him in the RHU and designate him in the SRG. Specifically, Mr. Molina alleges a causal connection between his protected speech and the adverse actions.

Accordingly, Mr. Molina's First Amendment claim will proceed against Defendants Russell, Payne, King and Maldonado.

## C.  Fourteenth Amendment Claims

Mr. Molina also contends that Defendants Russell, Payne, King, and Maldonado violated his rights under the Fourteenth Amendment, which encompasses the rights to substantive and procedural due process. Although Mr. Molina does not specify which right was violated, he alleges both that he was punished as a pretrial detainee and that he was denied proper procedures at the SRG hearing. Thus, the Court will consider both substantive and procedural due process claims.

### 1.      Substantive Due Process

"A pretrial detainee may not be punished at all under the Fourteenth Amendment"
whether by being subjected to unconstitutional conditions of confinement or otherwise. *Darnell*
*v. Piniero*, 849 F.3d 17, 35 (2d Cir. 2017); *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1979)
("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of
guilt in accordance with due process of law."); *Benjamin v. Fraser*, 264 F.3d 175, 188 (2d Cir.
2001) ("restrictions on pretrial detainees that implicate a liberty interest protected under the Due
Process Clause may not 'amount to punishment of the detainee'").

When considering whether the conditions imposed on pretrial detainees violate
substantive due process, the "court must decide whether the [condition] is imposed for the
purpose of punishment or whether it is but an incident of some other legitimate governmental
purpose." *Bell*, 441 U.S. at 538. If the plaintiff cannot demonstrate an "expressed intent to punish
on the part of detention facility officials, that determination generally will turn on 'whether an
alternative purpose to which [the condition] may rationally be connected is assignable for it, and
whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Id.*
Therefore, "if a restriction or condition is reasonably related to a legitimate governmental
objective, it does not, without more, amount to 'punishment.'" *Id.* at 539. On the other hand, if
the condition "is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a
court may legitimately infer that the purpose of the governmental action is punishment." *Id.* The
Supreme Court has identified several legitimate government interests such as ensuring the
detainee's presence at trial, maintaining security and order within the correctional facility, and
ensuring that detainees do not have access to weapons or illicit drugs. *Id.* at 540.

In *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48 (2d Cir. 2017), the Second
Circuit considered the claim of a pretrial detainee who had been returned to the SRG Program

without a hearing. The court noted that "although plausibly related to security concerns in general, [plaintiff's conditions of confinement in the SRG Program] were so excessively harsh as to be punitive. [Plaintiff] was kept in solitary confinement for 23 hours a day for almost seven months . . . . He received 'absolutely no programming or counselling or therapy' during that period." *Id.* at 58.

Mr. Molina includes a litany of conditions to which he was subjected in the SRG Program. It is not clear that many of the restrictions were necessary to maintain institutional security or ensure his presence at trial. For example, restrictions on visits, phone calls, commissary purchases, and showers do not appear clearly related to either objective. *See* Compl. at 12-13 (detailing "[a]typical and significant hardship[s]" at Phase 3 Corrigan). Absent clear evidence that the conditions are all related to legitimate governmental purposes and are not excessively harsh, at this stage of the case, the Court infers that the conditions were intended as punishment.

Mr. Molina was sent to the SRG Program in April 2018 and was permitted to renounce SRG membership and be released from the Program in September 2019. *See* Ex.: Letter Approving Renunciation, ECF No. 1 at 19 (Sept. 23, 2019). Thus, Mr. Molina was subject to the alleged conditions for seventeen months.

Accordingly, the Court concludes that Mr. Molina has alleged a plausible substantive due process claim against Defendants Russell and Payne for his confinement in RHU and against Defendants King and Maldonado for his time in the SRG Program.

### 2. Procedural Due Process

A procedural due process claim "permits only an evaluation of whether Defendants' method for coming to their [Security Risk Group] determination is sufficient." *See Proctor v.*

*LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017).

"The level of procedural protection differs according to the purpose of confinement." *Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987). Although "full adversary proceedings are not required for disciplinary deprivations of liberty in the prison setting," requirements do include "written notice, adequate time to prepare a defense, a written statement of the reasons for action taken, and a limited ability to present witnesses and evidence." *Fraser*, 264 F.3d at 190 (applying the procedural due process standards required for convicted inmates to pretrial detainees (citing *Wolff v. McDonnell*, 418 U.S. 539, 561-70 (1974)).) Administrative segregation is "appropriate when necessary to incapacitate an inmate who 'represents a security threat' or to 'complete an investigation into misconduct charges.'" *Proctor*, 846 F.3d at 609 (citing *Hewitt v. Helms*, 459 U.S. 460, 476 (1983)).

Mr. Molina has stated a plausible claim that prison officials denied adequate notice and the opportunity to present a defense. Despite allegedly denying gang membership, Mr. Molina was not shown the evidence against him. Compl. at 9-10, ¶¶ 10-14. In addition, Hearing Officer King allegedly threatened him with more severe sanctions if he did not admit that he was a gang member. *Id.* Consequently, Mr. Molina was allegedly pressured signing the form and admitting gang membership. *Id.* Mr. Molina allegedly received no advanced, written notice or a written statement explaining why action was taken, nor was he able to prepare a defense. District Administrator Maldonado allegedly failed to investigate these issues on appeal.

Accordingly, Mr. Molina has stated a plausible procedural due process claim under the Fourth Amendment against Hearing Officer King and District Administrator Maldonado.

### D.  Supervisory Liability Claims

Mr. Molina does not allege that Director Santiago and SRG Coordinator Aldi directly

participated in his First and Fourteenth Amendment claims. Rather, his claims against
Defendants Santiago and Aldi are based on their positions as supervisory officials. A plaintiff
who sues a supervisory official for monetary damages must allege that the official was
"personally involved" in the constitutional deprivation in one of five ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2)
> the defendant, after being informed of the constitutional violation through a report
> or appeal, failed to remedy the wrong, (3) the defendant created a policy or
> custom under which the unconstitutional practices occurred, or allowed the
> continuance of such a policy or custom, (4) the defendant was grossly negligent in
> supervising subordinates who committed the wrongful acts, or (5) the defendant
> exhibited deliberate indifference … by failing to act on information indicating
> that unconstitutional acts were occurring.

*Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865,
873 (2d Cir. 1995)); *see also Merriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) (to
impose supervisory liability prisoner must allege that official had actual or constructive notice of
unconstitutional practices and demonstrated gross negligence or deliberate indifference by failing
to act).

Here, Mr. Molina alleges that Defendants Santiago and Aldi created or are perpetuating
the policy requiring correctional staff to review inmate social media posts to support RHU
confinement or SRG designation. *See* Compl. at 12 ¶¶ 18-20 (alleging that Defendants, and
specifically Santiago and Aldi, have been "sued time and time again due to corruption" and
"illegal SRG designations). Furthermore, Mr. Molina alleges that they were grossly negligent in
managing their subordinates, which has resulted in the deprivation of substantive and procedural
due process. *Id.*; *see also id.* at 14 (setting forth claim for relief). Construing his allegations
"liberally," the Court finds that Mr. Molina's allegations are sufficient at this stage of litigation
to state a plausible claim for supervisory liability. *Cf. Benway*, 2019 WL 4762117, at *8
(dismissing a First Amendment claim against SRG Coordinator Aldi based on supervisory

15

liability when the only allegation was that "Aldi sent [plaintiff] a letter explaining the circumstances of his confinement in segregation, but never received a response).

Accordingly, the Court will permit the First and Fourteenth Amendment claims against Director Santiago and SRG Coordinator Aldi to proceed for further development of the record.

### E.  Motion to Appoint Counsel

Mr. Molina also seeks appointment of *pro bono* counsel under 28 U.S.C. § 1915. Mot. to Appoint Counsel, ECF No. 7 (Jan. 3, 2020).

The Second Circuit, however, has cautioned district courts against the routine appointment of counsel, given the limited volunteer attorney resources available. *See, e.g.*, *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 2004-06 (2d Cir. 2003) (citations omitted); *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172-73 (2d Cir. 1989). Before an appointment is even considered, the indigent person must demonstrate that he is unable to obtain counsel. *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). ("[T]he language of the statute itself requires that the indigent be unable to obtain counsel before appointment will even be considered.").

In his motion, Mr. Molina notes that he has contacted numerous attorneys, Mot. to Appoint Counsel at 5-6, but he does not specify if he contacted the Inmates' Legal Aid Program, the organization that provides legal assistance to Connecticut inmates. Based on these representations, Mr. Molina has not shown that he cannot obtain representation or legal assistance on his own.

Accordingly, his motion for appointment of counsel will be denied without prejudice to renewal.

## IV.    CONCLUSION

All claims for declaratory relief and the damages claims against the defendants in their official capacities are **DISMISSED** under 28 U.S.C. § 1915A(b). Any claims against Investigator Acevedo are **DISMISSED** as he is not a proper defendant in this case.

The case will proceed on the First Amendment claim against Defendants Russell, Payne, King, and Maldonado; the Fourteenth Amendment substantive due process claim against Defendants Russell, Payne, King, and Maldonado; the Fourteenth Amendment procedural due process claim against Defendants King and Maldonado; and the supervisory liability claim against Defendants Santiago and Aldi for failing to address the First and Fourteenth Amendment claims. All claims are against the defendants in their individual capacities only.

Mr. Molina's motion for appointment of counsel is also **DENIED** without prejudice to renewal.

The Court enters the following orders:

(1)     **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain the service or current work address for all defendants, mail a waiver of service of process request packet containing the Complaint to each defendant the addresses provided by **May 15, 2020**, and report to the court on the status of the waiver requests by **June 19, 2020**. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     **The Clerk shall** send the plaintiff a copy of this Order.

17

(3)      **The Clerk shall** send a courtesy copy of the Complaint and this Order to the

Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)      The defendants shall file their response to the Complaint, either an Answer or

motion to dismiss, by **July 24, 2020**. If they choose to file an Answer, they shall admit or deny

the allegations and respond to the cognizable claims recited above. They also may include all

additional defenses permitted by the Federal Rules.

(5)      Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be

completed by **December 4, 2020**. Discovery requests need not be filed with the court.

(6)      All motions for summary judgment shall be filed by **January 15, 2021**.

(7)      Under Local Civil Rule 7(a), a nonmoving party must respond to a dispositive

motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or

the response is not timely, the dispositive motion can be granted absent objection.

(8)      If the plaintiff changes his address at any time during the litigation of this case,

Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can

result in the dismissal of the case. The plaintiff must give notice of a new address even if he is

incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It

is not enough to just put the new address on a letter without indicating that it is a new address. If

the plaintiff has more than one pending case, he should indicate all the case numbers in the

notification of change of address. The plaintiff should also notify the defendant or the attorney

for the defendant of his new address.

(9)      The plaintiff shall utilize the Prisoner Efiling Program when filing documents

with the court. The plaintiff is advised that the Program may be used only to file documents with

the court. Local court rules provide that discovery requests are not filed with the court. D. Conn.

L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

(10)     **The Clerk shall** immediately enter the Standing Order Re: Initial Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of April, 2020.

/s/ Victor A. Bolden

VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE